188 S.W.3d 388 (2006)
In the Interest of S.L., D.B.B., and D.B., Jr., Children.
No. 05-05-00741-CV.
Court of Appeals of Texas, Dallas.
March 27, 2006.
*390 Kellye A. Swanda, Arlington, April E. Smith, Mesquite, for Appellants.
Jenny Lee Womack, Michael D. Munden, Henry Wade Juvenile Justice Center, and William T. Hill, Frank Crowley Courts Bldg., Dallas, for Appellee.
Before Justices RICHTER, LANG, and MAZZANT.

OPINION
Opinion by Justice LANG.
The Texas Department of Family and Protective Services (the Department) filed an action to terminate the parent-child relationship between: (1) Chanin Lindgren and her children, S.L., D.B.B., and D.B., Jr., (2) Carlos Dominguez and his child, S.L.,[1] and (3) Dominic Brown and his children, D.B.B. and D.B., Jr. The jury found that Lindgren's and Brown's parental rights should be terminated, and the trial court rendered judgment according to the verdict. On appeal, Lindgren and Brown contend the evidence was factually insufficient to support the jury's verdict that termination was in the best interest of the children. Brown also argues he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

I. FACTUAL AND PROCEDURAL BACKGROUND
Chanin Lindgren is the mother of the three children involved in this case. Lindgren *391 and Carlos Dominguez are the parents of S.L., who was born on January 18, 1994. Lindgren and Dominic Brown are the parents of D.B.B., born June 2, 2003, and D.B., Jr., born May 4, 2004.
On February 19, 2004, Bianca Beltran, a Child Protective Services (CPS) employee, contacted Lindgren after receiving a referral for neglect. Beltran determined there was no immediate danger to the children at that time. Soon thereafter, however, Beltran received a second referral that Lindgren was under the influence of intoxicating substances, which was corroborated by S.L.'s statement that he saw a crack pipe on the floor. Lindgren, who was pregnant with D.B., Jr. at the time, tested positive for cocaine. Based on the positive drug test, physical neglect of the children, and Lindgren's criminal history, Beltran determined that the children needed to be removed from Lindgren's care. On March 26, 2004, S.L. and D.B.B. were removed from Lindgren's home. When D.B., Jr. was born two months later, Lindgren and D.B., Jr. tested positive for cocaine and marijuana. D.B., Jr. was immediately removed from Lindgren's care.
On July 12, 2004, the Department filed a petition seeking termination of Lindgren's, Dominguez's, and Brown's parental rights. Prior to trial, Dorothy and Bernadette Smith, Brown's grandmother and aunt, filed a petition in intervention in which they sought to be appointed joint managing conservators of the children.
A jury trial was conducted from April 4, 2005 to April 8, 2005. At trial, the State presented the testimony of numerous witnesses including S.L.; Greg Robins, S.L.'s school guidance counselor; Bianca Beltran, the CPS worker who investigated the case; Shelly Nugent, another CPS worker who worked on the case; Carol Henderson, a professional counselor who had been working with S.L. on a weekly basis for almost a year; Dr. Laura Hastings, a doctor of psychology who conducted a psychological examination of S.L.; Dr. Rhonda Polakoff, a clinical psychologist who conducted a psychological assessment of D.B.B.; Brandon Smith, the supervisor for Dallas Court Appointed Special Advocates (CASA); Brady Moore, the CASA worker assigned to this case; and the foster mother and father, who said that they wanted to adopt the children.
The State also presented evidence detailing Lindgren's and Brown's criminal records. Evidence was presented that Lindgren spent fifteen days in jail in 1992 for failure to stop and render aid or give identification. She spent another thirty-seven days in jail in 1992 for failure to give identification and she spent thirty days in jail in 1993 for an unspecified infraction. Later in 1993, Lindgren was incarcerated in prison for possession of a controlled substance. She was in prison when S.L. was born and he was raised by his maternal grandmother for approximately the first seven years of his life. In 2001, Lindgren was released from prison and she moved to Dallas with S.L. At that time, Lindgren began using cocaine. She spent eighty-seven days in jail in 2001 for prostitution, and in October 2001, she was convicted on a charge of abandonment of a child and sentenced to two years' imprisonment when she left S.L. in a hotel room.
Lindgren began dating Brown in 2002. Evidence was presented that when their relationship began, Lindgren was a drug addict and Brown was a drug dealer. Brown was arrested in 1994 for unlawful delivery of a controlled substance. He pled guilty to the charge and received a probated sentence. His probation was revoked in 1997 when he was arrested for delivery of a controlled substance and possession of a prohibited weapon. In 1998, Brown pled guilty to possession with intent *392 to deliver cocaine and was sentenced to eight years in prison. He was later released from prison, but on September 30, 2003, Lindgren and Brown were arrested together. Brown was convicted of possession with intent to deliver cocaine, and at the time of trial, was in prison for this offense. Lindgren was also incarcerated at the time of trial.
Lindgren and Brown both testified on their own behalf. Lindgren acknowledged she engaged in conduct that endangered the physical and emotional well-being of the children. She asked that Brown's relatives, Dorothy and Bernadette Smith, be appointed managing conservators of the children. Lindgren testified that she wanted to rehabilitate herself, get her life in order, and then care for her children if Brown's relatives, whom she hoped would be appointed managing conservators, would give her the chance to do so. She also testified that she completed the eighth grade and has a GED. In the past, she worked cleaning apartments and offices and she planned to do the same upon release from prison.
Brown testified that he wanted the children to be placed with Dorothy and Bernadette Smith. He admitted that children are not safe in a drug environment, but stated that he had turned his life around and that it would be safe to entrust the children with him upon his release because he would not be committing any new offenses. He also testified that regardless of whether his rights are terminated, he intends to have contact with his children. Brown requested that the jury find it was not in the best interests of the children to terminate his parental rights. Dorothy and Bernadette Smith also testified and presented evidence in support of their petition to be named joint managing conservators of the children.
The jury unanimously found that the parent-child relationships between Lindgren and S.L., D.B.B., and D.B., Jr. and between Brown and D.B.B. and D.B., Jr. should be terminated. The trial court entered judgment on the verdict ordering that Lindgren's and Brown's parental rights to the children be terminated. This appeal followed.

II. STANDARD OF REVIEW
Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence. TEX. FAM.CODE ANN. § 161.206(a) (Vernon 2006); In re J.F.C., 96 S.W.3d 256, 263-64 (Tex.2002). The clear and convincing standard required for termination creates a higher burden to fulfill because of the severity and permanency of terminating the parent-child relationship. In re W.R.E., 167 S.W.3d 636, 640 (Tex.App.-Dallas 2005, pet. denied); In re J.N.R., 982 S.W.2d 137, 141 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Accordingly, an appellate court must also have a higher standard when reviewing the factual sufficiency of the evidence. In re C.H., 89 S.W.3d 17, 26 (Tex.2002).
When reviewing the factual sufficiency of the evidence supporting a termination finding, we inquire whether all the evidence, both in support of and contrary to the trial court's finding, is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. In re C.H., 89 S.W.3d at 27-29. Further, we consider whether the disputed evidence is such that a reasonable factfinder could not have reconciled that disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002); In re W.R.E., 167 S.W.3d at 641. If the disputed evidence is so significant that a factfinder could not reasonably *393 have formed a firm belief or conviction, then the evidence is factually insufficient. Id.

III. TERMINATING THE PARENT-CHILD RELATIONSHIP
Section 161.001 of the Texas Family Code permits a court to order termination of parental rights if two elements are established. TEX. FAM.CODE ANN. § 161.001 (Vernon 2006). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM.CODE ANN. § 161.001(1); In re J.W., 152 S.W.3d 200, 204 (Tex.App.-Dallas 2004, pet. denied). Second, the termination of the parent-child relationship must be in the best interest of the child. TEX. FAM.CODE ANN. § 161.001(2); In re J.W., 152 S.W.3d at 204-05.

A. Appellants' Challenge of Best Interest of the Child
Appellants Lindgren and Brown only challenge the second prong of this test. In three issues on appeal, Lindgren contends the evidence was factually insufficient to support the jury's finding that termination of the parent-child relationship between herself and S.L., D.B.B., and D.B., Jr. was in the best interest of the children. Likewise, Brown argues in his first two issues that the evidence was factually insufficient to prove that termination of the parent-child relationship between Brown and D.B.B. and between Brown and D.B., Jr. was in the best interest of the children.
There is a strong presumption that the child's best interest is served by keeping custody in the natural parent. TEX. FAM.CODE ANN. § 161.001(2); In re J.W., 152 S.W.3d at 207; In re K.C.M., 4 S.W.3d 392, 393-95 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). However, the factfinder may consider a number of factors in determining the best interest of the child: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future danger to the child; (4) the parental abilities of the person seeking custody; (5) programs available to assist those persons in promoting the best interest of the child; (6) plans for the child by those individuals or by the agency seeking custody; (7) stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976).
The absence of evidence about some of these considerations will not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest. In re C.H., 89 S.W.3d at 27. On the other hand, the presence of scant evidence relevant to each factor described in Holley will not support such a finding. Id. The Holley test focuses on the best interest of the child, not the best interest of the parent. In re R.F., 115 S.W.3d 804, 812 (Tex.App.-Dallas 2003, no pet.); D.O. v. Tex. Dep't of Human Servs., 851 S.W.2d 351, 358 (Tex. App.-Austin 1993, no writ). The need for permanence is the paramount consideration for a child's physical and emotional needs. In re R.F., 115 S.W.3d at 812. Importantly, termination should not be used to merely reallocate a child to better and more prosperous parents. In re W.E.C., 110 S.W.3d 231, 240 (Tex.App.-Fort Worth, 2003, no pet.).

B. Analysis
In our factual sufficiency inquiry, we look at all the evidence, both in support of and contrary to the finding, to see if the jury "could reasonably form a firm belief *394 or conviction" that terminating Lindgren's and Brown's parental rights was in the best interest of the children.
In support of her position, Lindgren emphasizes that she loves her children and that S.L. said he wanted to live with his real parents, Lindgren and Brown. Lindgren testified that, if her parental rights were not terminated, she would seek drug rehabilitation. She also testified that she would take parenting classes, anger management classes, and seek psychiatric help. Lindgren stated that she planned to work cleaning offices and apartments once she was released from prison. However, evidence in support of termination was also presented. Lindgren was a drug addict and had used drugs while pregnant with D.B., Jr. She was incarcerated and did not have a job. Lindgren acknowledged that she posed risks to the children and testified that she was not asking that the children be returned to her. She agreed that, at the time of trial, appointing her managing conservator would not be in the children's best interest because such an appointment would "significantly impair the children's health or emotional development." She requested that the intervenors be named joint managing conservators of the children. Additionally, testimony was presented that S.L. had also stated that he desired to stay at his foster home.
Some evidence favorable to Brown was presented. Brown testified that he loves his children very much. He said that S.L. stated he wanted to live with his parents, Lindgren and Brown. Brown stated he would not be committing new offenses upon his release, "eliminating the possible emotional damage to the children due to his incarceration." Also, Brown testified that he had turned his life around and that he was completing vocational training so he could obtain lawful employment upon his release from prison. Evidence against Brown and supporting the jury's verdict was also presented. For years, Brown's sole source of income was dealing illegal drugs and he had an extensive criminal record. He had left the children in Lindgren's care even though he knew she was a drug addict. Furthermore, Brown was incarcerated at the time of trial and did not have a stable source of income or a permanent home. Brown admitted that allowing him to retain his parental rights was "high risk" and that he was not in a position to care for the children. He testified that he wanted the intervenors to be appointed joint managing conservators.
It is not for this Court to evaluate the credibility of the witnesses. Weighing the credibility of witnesses is within the sole province of the jury. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.2003). Appellants contend that the evidence was factually insufficient to support the jury's determination that termination was in the children's best interest. However, based on our review of all the evidence, we cannot agree that the jury was unreasonable in forming a firm belief about the truth of the Department's allegations. See In re C.H., 89 S.W.3d at 27-29. We conclude that the evidence was factually sufficient to support the jury's finding that termination of Lindgren's and Brown's parental rights was in the best interest of the children.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

A. Applicable Law
In his third issue, Brown contends he was denied effective assistance of counsel. The Texas Supreme Court has held that the statutory right to counsel in a parental rights termination proceeding includes a guarantee that counsel will perform effectively. *395 In re M.S., 115 S.W.3d 534, 544 (Tex.2003); see TEX. FAM.CODE ANN. § 107.013(a)(1) (Vernon 2006). In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-part standard for evaluating claims of ineffective assistance of counsel. This standard has been adopted by the Texas Court of Criminal Appeals and has also been adopted by the Texas Supreme Court for parental-rights termination proceedings. See In re M.S., 115 S.W.3d at 545; Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim.App.2001); Thompson v. State, 9 S.W.3d 808, 812-13 (Tex.Crim.App.1999).
Strickland requires that, to prevail on a claim of ineffective assistance of counsel, appellant must show (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for trial counsel's errors, the result would have been different. See Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. Under Strickland, appellant must successfully show both prongs of the inquiry to establish an ineffective assistance claim. In re M.S., 115 S.W.3d at 545.
"With respect to whether counsel's performance in a particular case is deficient, we must take into account all of the circumstances surrounding the case, and must primarily focus on whether counsel performed in a `reasonably effective' manner." Id. (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). In doing so, we give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052; see In re J.W., 113 S.W.3d 605, 616 (Tex.App.-Dallas 2003, pet. denied), cert. denied, 543 U.S. 965, 125 S.Ct. 419, 160 L.Ed.2d 334 (2004). Only when the conduct is so outrageous that no competent attorney would have engaged in it is the challenged conduct ineffective assistance. Garcia, 57 S.W.3d at 440; Thompson, 9 S.W.3d at 813; see In re S.G.S., 130 S.W.3d 223, 228 (Tex.App.-Beaumont 2004, no pet). Ordinarily, counsel should not be condemned as unprofessional or incompetent without an opportunity to explain the challenged actions. Bone v. State, 77 S.W.3d 828, 836 (Tex.Crim.App.2002). Thus, when the record is silent regarding counsel's reasons for his conduct, we defer to counsel's decision if there is at least the possibility that the conduct could have been legitimate trial strategy. Ortiz v. State, 93 S.W.3d 79, 88-89 (Tex.Crim.App. 2002), cert. denied, 538 U.S. 998, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003).
Under the second prong of the Strickland standard, we must determine whether counsel's defective performance caused harm. The test we apply is whether "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." In re M.S., 115 S.W.3d at 549-50 (quoting Garcia, 57 S.W.3d at 440).

B. Analysis
Brown raises two complaints about his trial counsel's conduct. First, Brown alleges he was denied effective assistance of counsel because his trial counsel did not file pleadings requesting that his paternity of D.B.B. and D.B., Jr. be established since failure to establish paternity was one of the grounds for termination alleged against Brown. Under the Family Code, the rights of an alleged father may be terminated if "after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160." TEX. FAM.CODE ANN. § 161.002(b)(1) (Vernon 2006). Second, Brown argues that he *396 was denied effective assistance of counsel because his trial counsel filed a general denial on his behalf and did not request that Brown be appointed managing conservator of the children or that the intervenors alternatively be appointed managing conservators.
As to Brown's first complaint, he signed an Affidavit of Status a week before trial in which he admitted that he was the father of D.B.B. and D.B., Jr. Nothing in the record shows why counsel did not assist Brown in establishing his paternity at an earlier date, and counsel was not given an opportunity to explain his alleged inaction. See Bone, 77 S.W.3d at 836. As to Brown's second complaint, when Lindgren filed a motion to modify placement requesting that the children be placed with the intervenors, Brown's counsel filed a response joining in Lindgren's request. Brown also affirmatively testified that he sought to have custody of the children awarded to the intervenors.
Based on this evidence, we cannot conclude counsel's decision not to request that Brown be appointed managing conservator of the children was outside the range of reasonable professional assistance. See Strickland, 466 U.S. at 689, 104 S.Ct. 2052; In re J.W., 113 S.W.3d at 616. Counsel's decision could have been legitimate trial strategy in light of Brown's testimony that he wanted his relatives appointed joint managing conservators of the children. See Ortiz, 93 S.W.3d at 88-89. Because Brown is unable to establish deficient performance under the first prong of the Strickland standard, we need not address harm under the second prong.[2]See In re M.S., 115 S.W.3d at 545. Brown failed to establish that he received ineffective assistance of counsel, and accordingly, his third issue is decided against him.

V. CONCLUSION
For the reasons set out above, we conclude the evidence was factually sufficient to support termination of Lindgren's and Brown's parental rights. Furthermore, we decide against Brown on his ineffective assistance of counsel claim. The trial court's judgment is affirmed.
NOTES
[1] Carlos Dominguez failed to appear at trial after being served with citation by publication. Dominguez's parental rights were terminated in the trial court's judgment. He is not a party to this appeal.
[2] Brown is also unable to demonstrate any harm because overwhelming evidence was presented to support termination under either of the other two grounds for termination alleged in the petition, namely that Brown: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and (2) engaged in conduct or knowingly placed with children with persons who have engaged in conduct which endangered the children's physical or emotional well-being.